FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 23  PM 12: 20

LORETTA G. WHYTE
CLERK

## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL MEAD #342877**                    **CIVIL ACTION**

**versus**                                  **NO. 05-0203**

**BURL CAIN, WARDEN**                       **SECTION: "B" (3)**


### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Fee_____
Process____
X  Dktd_____
CtRmDep____
Doc. No_____

Petitioner, Michael Mead, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On July 21, 1999, he was convicted of possession with intent to distribute cocaine in violation of La.Rev.Stat.Ann § 40:967.[2]  On August 13, 1999, he was found to be a third offender and was sentenced as such to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence, with credit for time served.[3]  On April 11, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[4]  He then filed with the Louisiana Supreme Court a petition for a writ of certiorari[5] which was denied on May 31, 2002.[6]

On or about January 31, 2003, petitioner filed with the state district court an application for post-conviction relief.[7]  That application was denied on July 23, 2003.[8]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ[9] which was

---

[2] State Rec., Vol. I of II, transcript of July 21, 1999, p. 42; State Rec., Vol. I of II, minute entry dated July 21, 1999; State Rec., Vol. I of II, jury verdict form.

[3] State Rec., Vol. I of II, transcript of August 13, 1999, pp. 9-10; State Rec., Vol. I of II, minute entry dated August 13, 1999.

[4] State v. Mead, No. 2000-KA-0621 (La. App. 4th Cir. Apr. 11, 2001) (unpublished); State Rec., Vol. I of II.

[5] State Rec., Vol. I of II.

[6] State v. Mead, 816 So.2d 866 (La. 2002) (No. 2001-K-1787); State Rec., Vol. I of II.

[7] Supplemental State Rec., Vol. I of I.

[8] State Rec., Vol. II of II, docket master.

[9] State Rec., Vol. I of II.

denied on October 15, 2003.[10]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari[11] which was denied on November 24, 2004.[12]

On January 19, 2005, petitioner filed this federal application for *habeas corpus* relief.[13]  In support of his application, petitioner claims that he received ineffective assistance of counsel and that there was insufficient evidence to support his conviction.

The state concedes that petitioner's federal application is timely and does not argue that he failed to exhaust his remedies in state court.  Accordingly, this Court will address the merits of petitioner's claims.

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

---

[10]  State v. Mead, No. 2003-K-1435 (La. App. 4th Cir. Oct. 15, 2003) (unpublished); State Rec., Vol. I of II.

[11]  Supplemental State Rec., Vol. I of I.

[12]  State *ex rel.* Mead v. State, 888 So.2d 220 (La. 2004) (No. 2003-KH-3048); Supplemental State Rec., Vol. I of I.

[13]  Rec. Doc. 2.

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Officer Melvin Walton testified that on March 27, 1997, he was on routine patrol with his partner, Officer Terrence White, in the C.W. Peete, Magnolia Housing Project.  Officer Walton testified that he and his partner saw a group of "subjects" [FN] standing in a tight circle at the corner of Sixth and Magnolia Streets.  One of these subjects, later revealed to be Don Jackson, who Officer Walton knew, yelled "heads up" upon seeing the officers.  The entire group then began to walk away.  The officers immediately decided to stop all of the subjects, and they called Officer Akron Davis for assistance.  Officer Davis drove into the courtyard.  Officer White drove Officer Walton to a passageway.  Officer Walton testified that when he walked into the passageway, he saw Officer Davis place two of the

- 4 -

subjects on the car.  Officer Walton also testified that he saw the defendant walking with a female.  The defendant put his hand in his pocket, and his other arm around the female.  Officer Walton stated, "As he got closer to me he pushed her on me and ran."  Officer Walton chased him.  The defendant threw something down as he ran. Officer Walton stopped the defendant.  Officer Walton said that he and Davis went back to the spot where they had seen the defendant throw an object, and Officer Davis found a plastic bag containing forty pieces of individually wrapped crack.   The officers later searched the defendant and found $775.00.  The defendant said that the money was an income tax refund.

> [FN] Walton was unsure about the exact number of males and females.

On cross-examination, Officer Walton stated that he never lost sight of the defendant in the chase and that there was no one else in the driveway when he was chasing the defendant.  He further stated that there was trash in the area.

Officer Davis said when pulled up in response to the call, he saw a group of guys standing in a group, talking.  As Officer Davis was getting out of his car, he saw Officer Walton run behind a group of subjects.  Officer Davis testified that he got back into his car. Officer Walton radioed Officer Davis and told Officer Davis to meet him.  When Officer Davis arrived, Officer Walton was walking back with the defendant.  Officer Walton told him to search for the object the defendant threw down in the 2700 block of Sixth Street.  Officer Davis found the bag containing the drugs within two minutes.  It was located near a parked car in the middle of the street.  Officer Davis testified that a nearby dumpster had trash around it, but the street was clean.

On cross-examination, he said that Officer Walton had told him that the object was white.

The defense called Quain Minor.  Minor testified that she was with the defendant, and he ran when the officers approached.  She said he did not push her into the officers, and that he had no drugs on him.  She further testified that she had gone through the defendant's pockets earlier to get some money for food.[14]

---

[14]  State v. Mead, No. 2000-KA-0621, at 2-3 (La. App. 4th Cir. Apr. 11, 2001) (unpublished); State Rec., Vol. I of II.

Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See</u> <u>id</u>. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. In making a

- 6 -

determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner first argues that his counsel was ineffective in failing to present a crucial piece of evidence during the trial. Petitioner contends that the $775 in cash found on him at the time of his arrest was from his income tax refund. Petitioner claims that his counsel should have procured and introduced at trial a copy of the cashed refund check to rebut the implication that the large sum of cash represented proceeds from drug sales. In support of his claim, petitioner attaches to his federal application a copy of his refund check in the amount of $1491.20.

It is unclear why petitioner's counsel did not procure and introduce at trial a copy of the refund check. Nevertheless, even if it is assumed that counsel performed deficiently in that regard, the Court rejects petitioner's contention that he was prejudiced as a result. The evidence against petitioner was overwhelming, i.e. eyewitness testimony that he discarded forty individually-wrapped pieces of crack cocaine[15] while fleeing from the police. Moreover, petitioner's contention that the cash was from a tax refund was brought to the jurors' attention[16] and obviously rejected by them. Even if a copy of the income tax refund check had been introduced at trial, there is absolutely no basis for believing that this single piece of evidence would have been sufficient to lead to a different result in this proceeding in light of the other evidence of petitioner's guilt.

Petitioner also contends that his counsel was deficient in failing to investigate and challenge the predicate convictions used to enhance his sentence in the habitual offender proceeding. Specifically, petitioner contends that counsel should have challenged the use of his first conviction because the minute entry introduced with respect to that conviction indicated that he had only "standby counsel."

"Standby counsel" is a legal term which refers to cases in which the criminal defendant *represents himself* but has an attorney *standing by* to assist him and to take over if it becomes necessary to terminate the self-representation. See, e.g., Faretta v. California, 422 U.S. 806, 834 n.46 (1975) ("[A] State may – even over objection by the accused – appoint a 'standby

---

[15] The Court additionally notes that petitioner's argument that forty pieces of crack is not an amount sufficiently large for the jury to infer that the drugs were for distribution, as opposed presumably for merely personal use, is ludicrous. See discussion at *infra* page 14.

[16] State Rec., Vol. I of II, transcript of July 21, 1999, p. 5.

counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary."); see also McKaskle v. Wiggins, 465 U.S. 168 (1984).

Petitioner's claim has no merit because the record conclusively proves that his underlying allegation is factually inaccurate. Petitioner's current sentence was enhanced based on two prior convictions for possession with intent to distribute cocaine, i.e. a conviction on April 13, 1994, in case number 369-144, and a conviction on August 14, 1995, in case number 372-869.[17] Neither of those predicate convictions involved "standby counsel." A minute entry and guilty-plea form reflects that petitioner was represented in case number 369-144 by Lindsay Williams of the Orleans Indigent Defender Program.[18] Likewise, a minute entry and guilty-plea form reflects that petitioner was represented in case number 372-869 by Ray Harris.[19]

Moreover, the Court notes that petitioner's claim is also legally meritless. The allocations of the burdens of proof in Louisiana habitual offender proceedings are as follows:

> If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State.

State v. Shelton, 621 So.2d 769, 779 (La. 1993) (footnote omitted) (emphasis added).

---

[17]  State Rec., Vol. I of II, multiple bill of information.

[18]  State Rec., Vol. I of II.

[19]  State Rec., Vol. I of II.

As noted, with respect to both predicate convictions, the state introduced copies of petitioner's guilty-plea forms. On those forms, signed by petitioner, he acknowledged that he was aware of and was waiving various rights, including, but not limited to, his right against self-incrimination, right to trial by jury, and right to confront his accusers. He also acknowledged on the forms that he was "fully satisfied" with his attorney, that he was pleading guilty because he was in fact guilty, and that he had not been forced, threatened, or intimidated into entering the pleas.

By introducing copies of the minute entries and guilty-plea forms, the state met its initial burden of proof to establish that petitioner was a habitual offender with two prior convictions for possession with intent to distribute cocaine. At that point, the burden of proof shifted to petitioner to demonstrate an infringement of his rights or a procedural irregularity with respect to the guilty pleas. Even if petitioner's counsel had performed a more thorough investigation of the predicate convictions, there is no reason to believe that he would discovered any defect in those proceedings rising to that level. Moreover, even if the burden had ultimately shifted back to the state, it is evident that it could have established the constitutionality of the pleas.

For the foregoing reasons, the Court finds that petitioner's claim is factually inaccurate, in that his underlying allegation, i.e. that he had only standby counsel with respect to one of his predicate convictions, is simply untrue. Additionally, the Court finds that petitioner's claim is legally meritless, in that he has not established that his counsel performed deficiently in not performing a more thorough investigation of the predicate convictions and that any prejudice resulted.

Accordingly, petitioner has failed to demonstrate that the state court's decision denying his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court likewise rejects those claims.

Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction. The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319). This Court may find the evidence sufficient even though the facts additionally support one or more reasonable hypotheses which are consistent with petitioner's claim of innocence. Foy v. Donnelly, 959 F.2d 1307, 1316 (5th Cir. 1992); see also Gibson v. Collins, 947 F.2d 780, 783 (5th Cir. 1991). "The Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A sufficiency of the evidence argument presents a mixed question of law and fact. Taylor v. Day, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). Therefore, this Court must defer to the state court unless its decision

- 11 -

regarding the claim "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's

challenge to the sufficiency of the evidence, holding:

> The defendant argues the evidence was insufficient because Officer Walton saw the defendant throw down the drugs, but Officer Davis was the one who found them.  He argues that there was trash in the area, that there were other white objects in the area, and that another individual could have discarded the drugs.
>
> The standard of appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979).  Either direct or circumstantial evidence may prove the essential elements of the crime.  With circumstantial evidence, the rule is: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438.  This rule is not a separate test from the review standard established by Jackson v. Virginia.  Rather, it is an evidentiary guideline, which facilitates appellate review of the evidence.  State v. Jacobs, 504 So.2d 817, 820 (La. 1987).  Ultimately, to support a conviction, the evidence, whether direct or circumstantial, or both, must be sufficient under Jackson to satisfy any rational trier of fact that the defendant is guilty beyond a reasonable doubt.  State v. Sutton, 436 So.2d 471 (La. 1983).  Specific intent may be inferred from circumstances and the defendant's actions.  State v. Smith, 94-2588 (La. App. 4th Cir. 3/27/96), 672 So.2d 1034.
>
> This court reviewed the law on point in State v. Allen, 96-0138, pp. 4-5 (La. App. 4 Cir. 12/27/96), 686 So.2d 1017, as follows:
>
>> To support a conviction for possession of narcotics, the State must prove that a defendant knowingly possessed narcotics.  State v. Chambers, 563 So. 2d 579, 580 (La. App. 4th Cir. 1990).  The State need not prove that the defendant was in actual possession of the narcotics found; constructive

- 12 -

possession is sufficient to support conviction.  See
State v. Trahan, 425 So.2d 1222, 1226 (La. 1983); see
also State v. Cann, 319 So.2d 396, 397 (La. 1975).
The mere presence of a defendant in the area where
the narcotics were found is insufficient to prove
constructive possession.  See State v. Collins, 584
So.2d 365, 360 (La. App. 4th Cir. 1991); see also
Cann, supra at 397.

A person not in physical possession of
narcotics may have constructive possession when the
drugs are under that person's dominion and control.
State v. Jackson, 557 So.2d 1034, 1035 (La. App. 4th
Cir. 1990).  A person may be deemed to be in joint
possession of a drug which is in physical possession
of a companion if he willfully and knowingly shares
with the other the right to control it.  State v. Smith,
257 La. 1109, 245 So.2d 327, 329 (1971).
Determination of whether a defendant had
constructive possession depends on the circumstances
of each case.  See Cann, supra at 399-400.  Among
the factors to consider in determining whether the
defendant exercised dominion and control sufficient
to constructive possession are whether the defendant
knew that illegal drugs were present in the area, the
defendant's relationship to the person in actual
possession of the drugs, whether there is evidence of
recent drug use, the defendant's proximity to the
drugs, and any evidence that the area is frequented by
drug users.  See State v. Pollard, 93-1960, p. 13 (La.
App. 4th Cir. 7/14/96), 640 So.2d 882, 888.

In this case, Officer Walton told Officer Davis where to search
for the abandoned object.  He accompanied Officer Davis in the
search.  Although Officer Davis did say that there may have been
other white objects in the area, the drugs were found in the middle of
a clean street within two minutes.  There was no testimony that others
passed the spot in the short period between the defendant abandoning
an object and the drugs being found.  The State successfully proved
that the defendant threw down a bag containing forty pieces of crack
individually wrapped.  Accordingly, the State proved that the
defendant possessed cocaine with the intent to distribute.

This assignment of error is without merit.[20]

Clearly, there was sufficient evidence to show that petitioner was in possession of the cocaine based on Walton's testimony. Therefore, the only remaining issue is whether there was sufficient evidence to show that the cocaine was intended for distribution. The state courts found, and this Court agrees, that the evidence was more than sufficient. Under Louisiana law, an intent to distribute may be inferred from a number of factors. See State v. Hearold, 603 So.2d 731, 735 (La. 1992). Among the factors to be considered is whether the drugs were in a sufficient quantity and packaged in a form consistent with distribution. The instant case involved *forty individually-wrapped* rocks of crack cocaine. Clearly, the drugs, being individually wrapped, were packaged in a form consistent with distribution. Moreover, a review of Louisiana jurisprudence leads to the inexorable conclusion that forty rocks are more than enough crack cocaine to support an inference that the drugs were intended for distribution. See, e.g., State v. Martin, 730 So.2d 1029, 1034-35 (La. App. 4th Cir. 1999) (thirty-nine rocks sufficient to support an inference that the drugs were meant for distribution); State v. Bentley, 728 So.2d 405, 412 (La. App. 4th Cir. 1998) (thirty-four rocks); State v. King, 683 So.2d 1228, 1233 (3rd Cir. 1996) (thirty rocks).[21]

In the instant case, the state court identified the proper standard, i.e. the Jackson standard, and applied it in a reasonable manner. Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly

---

[20]  State v. Mead, No. 2000-KA-0621, at 7-9; State Rec., Vol. I of II.

[21]  Petitioner argues that no expert testified that forty rocks of cocaine is an amount inconsistent with personal use. When dealing with such a substantial amount, the jury is allowed to draw that inference even without expert testimony. See Martin, 730 So.2d at 1035.

- 14 -

established Federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim challenging the sufficiency of the evidence.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Michael Mead be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-second day of March, 2006.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

- 15 -